[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Barbara L. Waggoner is the owner of land known as 314 Vineyard Point Road, Guilford, Connecticut, who brings this action in her Amended Complaint dated April 9, 1997 seeking in the First Count: A judgment quieting and settling title to the land by VIRTUE of the warranty deeds conveyed to her by her predecessor in title Mardo P. Pattou to her and her husband, Paul E. Waggoner dated November 12, 1959 (Exhibit C). Paul E. Waggoner quit claimed his interest to Barbara Waggoner ("Barbara") October 1, 1994 (Exhibit D). Mardo P. Pattou acquired his title to the subject property from Edwin E. Benton ("Edwin") May 12, 1956 (Exhibit B). Edwin E. Benton acquired his title to the subject premises by Warranty deed from his father Eliot H. Benton ("Eliot") March 11, 1954. (Exhibit A). Eliot first on January 13, 1953 conveyed to H. Milton Benton, his son ("Milton") by warranty deed (Exhibit E) a portion of his land. Eliot owned originally all the land now in dispute which was located in Guilford, Connecticut bounded all on Vineyard Point Road formerly known as Vineyard Road. His first division of all his property was the portion conveyed in 1953 to Milton. Exhibit E describes the land bounded and described as follows:
Beginning at a point on Vineyard Road, which point is distant 205 feet westerly from the westerly line of land belonging now or formerly to Albert E. Sproul Jr. and Dorothy N. Sproul, when measured along said Vineyard Road, thence bounded and described as follows: CT Page 4675
NORTHERLY by said Vineyard Road, 318 feet;
 EASTERLY by other land of the Grantor herein, 435 feet by a straight line; which line in marked by a stone wall;
 SOUTHERLY by other land of the Grantor herein, 170 feet by a straight line; and
 WESTERLY by other land of the Grantor herein 484 feet by a straight line.
 Said northwesterly, southwesterly and southeasterly corners are marked by iron pipes.
The plaintiff argues that Milton's northeast corner on Vineyard Point Road was established 205 feet west of the westerly boundary of land owned by Sproul.
The subsequent deed (Exhibit A) to Edwin the plaintiff argues established the Northwest corner of Edwin's property on Vineyard Point Road 165 feet west of Sprouls westerly boundary or forty feet east of Milton's northeast corner.
Edwin testified that he is a builder who built the house now owned by Waggoner. He testified his father Eliot built the dirt road in 1951 or 1952. The road built by Eliot was a way to go down to the beach. The road was made of gravel and is about the same dimensions but now paved.
Edwin stated that his brother Milton had put up the wire fence to keep cows out while he was building the house, which he sold to Pattou. The wire, a single strand was attached to a tulip tree which was there for some 68 years. The wire ran down alongside the westerly boundary of Edwin's property. The wire was never intended to be a boundary line. The tulip tree is shown on both surveys, Exhibit G and Exhibit 1.
The gravel road as it now exists known as Benton Beach Road runs southerly along the westerly boundary of the Waggoner's property then southeasterly to the beach alongside property south of the rear boundary of the Waggoner property. This rear property was formerly owned by Dr. Mrs. Raccuglia ("Raccuglia") and now owned by the other named defendants Ballek and Baxter who filed a stipulated judgment in this case dated December 11, 1997. They CT Page 4676 like the other defendants, have a 25 foot easement leading from Vineyard Point Road along Waggoners Westerly Property line referred to in all the deeds in evidence.
On November 28, 1979 and recorded December 20, 1979 Eliot filed a notice in the land records of Guilford (exhibit F)
"To whom it may concern: November 28, 1979
I Eliot H. Benton, of Sachem's Head, Guilford, Connecticut, do hereby certify that I was born September 16, 1889 in the house now my residence at 370 Vineyard Point Road, My life-time has been spent in general farming on this farm, which was given to my father (44 acres) by my grandfather in 1888. Originally, it included land on both sides of the Vineyard Point Road and also on both sides of the Benton Beach Road.
The old roadway or right-of-way commonly known now as Benton Beach Road has always extended from the Vineyard Point Road, southerly and southeasterly, across the Vineyard Creek, and along the edge of upland to my beach. Near the rear or Southerly bound of land now owned by George G. Wilcox, and about opposite the house built by my son Edwin on "Beauty Mountain," so called, the roadway or right-of-way as always deviated out or easterly somewhat so as to follow the natural contour of upland. The slight bending is in the line of the old roadway and it dodges wetland.
In deeding the Beauty Mountain property east of the old road way to my son Edwin in 1954, my intention was to establish the old roadway or `right-of-way as it now exists' as the south and west boundaries of his (Edwin's) property."
Such notice was filed when Raccuglia had a dispute with a Benton property owner about property lines. Edwin testified the road was gravel and in 1954 it was not paved. However the gravel road his father built is about the same dimensions as the one paved now. Edwin was unable to think of any changes to the road from that which his father, Eliot, had built.
Glenda Raccuglia ("Raccuglia") testified that the Benton Beach Road was plowed by her to Vineyard Point Road. She and her doctor husband lived behind the Waggoner property for ten years and she accessed her property through Benton Beach Road. Her property is now owned by Ballek and Baxter. Raccuglia testified that CT Page 4677 proceeding southerly from Vineyard Point Road the property which was to the left of Benton Beach Road was always well maintained while the property to the right of the road was overgrown and never cut. Also there was no maintenance behind her as the road continued southerly to the beach.
Paul Waggoner ("Paul") testified when the bought property from Pattou, Benton Beach Road had a new surface and that the lawn went to the edge of the road. He testified that there were no changes to the grass area and pavement since the bought the property. Paul testified he maintained the property on both sides of the wire fence (see Exhibit G) throughout his ownership since 1959. Waggoners do not claim any ownership in the property west of the edge of Benton Beach Road as it now exists. Between 1959 to 1990 there was never a challenge to his use or maintenance of the property. Paul became aware of the dispute on or about October 30, 1992 when Joel Helander ("Joel") president of Benton Beach Corporation, told Paul that some of the land the was maintaining belonged to the corporation. Joel showed Paul an iron pipe, five feet inside from the wire fence attached to the tulip tree and ten feet from the easterly edge of the paved portion of Benton Beach Road to indicate Paul's westerly boundary line. Paul first called his surveyor Anderson Associates to make a survey (Exhibit G). Until April 1993 the plaintiffs never had a survey done.
The defendant Benton Beach Corporation ("BBC") is a Connecticut Corporation whose corporate resolution is to preserve the unique beauty and natural habitat of a 19.5 acre parcel situated in the Town of Guilford. While the undeveloped land has been valued at over $1,000,000.00, the BBC is intent on preserving its pristine condition. The land has been in the Benton family since 1869, and the chain of title is well documented in the Guilford Land Records. The BBC and its members rely on the 25 foot strip that they own by deed for ingress and egress of pedestrian and vehicular traffic, down to the beach. The defendants assert that the legal description contained in the initial deed from Edwin Benton to the Pattous establishes the boundaries of the lot, and also grants the Waggoners a 25 foot wide right of way. That deed states that the parcel was to contain 165 feet of frontage along Vineyard Point Road (Exhibit B).
The plaintiff Barbara as aforementioned in her First Count claims that her deeded Westerly boundary line is the easterly edge of the private drive known as Benton Road or Benton Beach Road. Alternatively she claims ownership of any land between the CT Page 4678 edge of Benton Beach Road and her deeded westerly boundary by adverse possession in her Second Count. She also claims a deeded right of way over Benton Beach Road which the defendants admit.
The plaintiff complains in her Third and Fourth Counts that the defendant Benton Beach Corporation, its officers or agents, trespassed upon her property where it borders Benton Beach Road, destroyed her old fence, i.e. the wire fence, erected a more substantial fence which now blocks her access to Benton Beach Road and prevents her from maintaining her yard, and vandalized her lawn and plants. She asks the Court to enjoin the Benton Beach Corporation from maintaining the fence, newly erected or otherwise interfering with her rights of access to Benton Beach Road. She seeks damages against the BBC and its officers and directors for trespass, and the malicious erection of the split rail fence. (See Fifth Count)
The defendant BBC, Joel Helander, Roger Benton, Donna Chemoki, Edwin Benton, H. Milton Benton, Carolyn Helander, David Ott, Heather Collinson, Katherine Benton (collectively known as "the defendants") respond to plaintiff's Amended Complaint, dated April 9, 1997, essentially leaving the plaintiff to her proof and as a special defense, to all counts asserts that the plaintiff fails to state a claim upon which relief can be granted.
The issue in this case is whether the plaintiff's westerly boundary is to the edge of Benton Beach Road as it now exists either by title or adverse possession.
The defendant argues that the plaintiff's claim that she owns or has title to all the land up to the easterly edge of the traveled or paved portion of Benton Beach Road should be rejected.
When Eliot conveyed property to Edwin in 1954 there was no survey or maps on record to show the boundaries of the land nor was there any when Waggoners bought their property in 1959.
In 1992 only after Joel showed Paul a marker where he claimed the property line to be did Paul have his surveyors draw the map (Exhibit G) showing the boundary line as being the wire fence attached to the tulip tree. The defendants had a survey (Exhibit 1) done then by Kevin Kenney dated December 3, 1997. The defendants thereafter erected a split rail fence on the boundary line they claim is the Westerly boundary of the plaintiffs property. Barbara claims under Count Three that the defendant in erecting CT Page 4679 the fence, trespassed on her property when they erected the split rail fence now there and she seeks the removal of that fence erected by Joel and David C. Ott ("Ott") another family member of BBC. The Third Count also seeks punitive damages for the trespass. The Fourth Count asserts that the defendant's fence interferes with her right of way. The Fifth Count seeks damages for the erection of a spite fence and punitive damages under Conn. General Statutes § 52-570.
The plaintiff's deed (Exhibit C) describes the premises that Waggoners received from Pattou (Exhibit B) from Edwin who received his described premises from his father Eliot (Exhibit A)
Exhibit C conveys to Paul and Barbara:
 Northerly by Vineyard Point Road, so-called, 165 feet, more or less;
 Easterly by a straight line marked by a stone wall by land now or formerly of Albert E. Sproul, Jr., 200 feet, more or less
 Southerly by land now or formerly of Edwin E. Benton, 165 feet, more or less; and
 Westerly by a right of way as it now exists, 200 feet, more or less.
Together with a permanent right of way unto the Grantees and the survivor of them and unto such survivor's heirs and assigns located along the westerly boundary line of said above described premises for purposes of access and egress to said Vineyard Point Road.
Also a right to use said right-of-way to exercise boating and beach privileges on a beach located on Long Island Sound, in common with others, which privilege is more particularly described in a deed dated March 11, 1954 from Eliot H. Benton to Edwin E. Benton and recorded in Volume 118, page 26 of the Guilford Land Records.
Exhibit B from Edwin to Pattou describes the same premises as recited in Exhibit C.
Exhibit A describes the premises that Eliot carved out for Edwin CT Page 4680 and that description describes the premises as follows:
Northerly by Vineyard Road, so-called, 165 feet;
 Easterly by a straight line marked by a stone wall by land now or formerly of Albert E. Sproul, Jr., 250 feet, more or less;
 Northerly again by land now or formerly of Albert E. Sproul, Jr., 52 feet, more or less;
 Easterly by a line marked by a ditch as it now stands by land now or formerly of Albert E. Sproul, Jr., 785 feet;
 Southerly and Westerly by a right of way as it now exists, 1000 feet more or less.
Together with a right of way to the Grantee, his heirs and assigns in common with others over a present right of way which is 25 feet wide to provide access and egress to and from said described premises, and further, the right to use said right of way to exercise bathing, boating and beach privileges on beach belonging to said Grantor along Long Island Sound which are hereby granted to the Grantee, his heirs and assigns as part of the consideration for this deed.
Keven Kenney ("Kenney") testified that the Waggoners received 165 feet more or less along Vineyard Point Road in their deed. Kenney testified that you cannot hold measurements to deeds necessarily but must use physical evidence. Measurements on the ground would control now what is the footage recited in the deed. Physical structures control. Attorney Albert I Sheppard ("Sheppard") who is well recognized as an expert in the Real Estate practice in Connecticut testified as a conveyancer that the parameters of the lot by acceptable practice is measured by metes and bounds. He further testified the general theory is that metes and bounds control over distances in deeds. Sheppard testified that monuments control over distances and an adjoining owners line can also be called a monument.
Kenny testified that he was attempting to reconstruct what the grantor's (Eliot) intent was when the gave his property to his two sons. An examination of the Kenny Survey established the northeast corner of the now Waggoner property by reference to the Sproul boundary. Measuring 165 feet more or less west of that CT Page 4681 point then establishes the westerly boundary of the Waggoner property. Measuring 25.07 feet shows the width of the right of way to the adjoining property given to Milton.
Sheppard's conclusions confirms that the measurements established by the Kenney survey are the correct boundaries. Eliot erected a 25 foot right of way and did not intend that the edge of the roadway was the westerly boundary to Edwin, now the Waggoner property.
Accordingly the court concludes that the Kenny survey (Defendants Exhibit One) shows the title to the respective properties more accurately. The plaintiff has failed to establish title to the land to the edge of Benton Beach Road by deed. Judgment is entered in favor of the defendants on the First Count.
SECOND COUNT
The plaintiff alternatively asserts title to the land to the edge of Benton Beach Road by adverse possession. Barbara alleges that for more than fifteen years that they have openly visibly and exclusively without license or consent and under a claim of right are now the owners of the land lying between her westerly boundary line and the easterly edge of the right of way over Benton Beach Road. Essentially the Waggoners like all other property owners by deed, have a 25 foot right of way over the property as described in the Kenney Survey dated December 3, 1997.
The essential elements of adverse possession under Connecticut law are that the legal owner shall have been ousted of his possession and kept out uninterruptedly for the statutorily required period of fifteen years under a claim of right by an open, visible, and exclusive possession by the claimant without a license from or the consent of the owner. Such a possession may not be established by inference, but only by clear and positive proof, with the burden of persuasion on the claimant. Ultimately, the question of whether possession is adverse is one of fact for the trier.
Among the factors that may be considered in assessing the existence of adverse possession are (1) the purchase in good faith of land and the receiving of a deed of title thereto; (2) the survey of such land by the purported owner-possessor; (3) the payment of taxes on the property by such person; and (4) attempts by the claimant to exclude others; such as trespassers, and to otherwise attend to the land. As these factors clearly imply, the mere uninterrupted possession of land, without the other CT Page 4682 essentials of adverse possession is not sufficient to divest the owner of his title to the property. (See A Primer on AdversePossession by Edward G. Mascola Conn. Bar Journal Vol 66 pp 304, 305). The only factor proven by the plaintiff in this case is that they attended the land.
The defendants further argue that the plaintiff did not maintain exclusive control of the disputed area. Paul Waggoner testified that the wire fence attached to the tulip tree was there since the time he bought the property until BBC removed it last summer. There was no change in the grass area since he bought the property so he maintained the grass area as it existed on both sides of the wire fence which he did not put up. The wire fence was not put up by Paul or Barbara to exclude the defendants or ever intended is a boundary. From all the evidence the mere mowing of the lawn and plantings is not that type of use or action which would be Commonly or reasonably taken to oust the rightful owners.
Joel also testified that other members of his corporation walked over the property on both sides of the wire fence freely. Neighbors and other adjoining owners weed whacked the property on both sides of the wire fence to the edge of the road. Raccuglia's dispute caused Eliot to put on the record his intent regarding the 25 foot right of way (Exhibit F) Nothing else was put on the land records concerning the 25 foot right of way which this court now has concluded was created by the deeds discussed in the First Count. Waggoner assumed only where the property line was and continued to maintain it although not exclusively as alleged or apparently hostile to the defendants.
The adverse possession must be notorious so as to give notice to an owner that a claim is being made contrary to his ownership or at least some act of constructive notice that such a hostile claim is being made. The defendants persuasively argue that the activities of the plaintiffs under a good neighborly policy allowed the plaintiffs to care for the landscaping up to the edge of the Benton Beach Road. The defendant argues therefore they afforded permission to maintain the property not under the color of an adverse claim to their land. "Although adverse possession is one of the modes of acquiring lawful title to land, it is not a favored one. For example, presumptions will not be indulged in by courts to establish a claim of title by adverse possession. To the contrary, in proceedings involving a claim of title by adverse possession, every presumption runs in favor of the holder CT Page 4683 of legal title, and none against him. Thus, the law presumes that possession of land by an adverse claimant is in subordination to the legal interests of the owner of record. Furthermore, an adverse claimant cannot acquire legal title by estoppel. In short, therefore, the doctrine of adverse possession `is to be taken strictly.'" (citations omitted) (See Mascola Conn. Bar Journal volume 66, p. 305)
In this case the court cannot conclude that the land in dispute was adversely possessed openly and notoriously or ousting the defendant's title is under the circumstances. There is no evidence that the Waggoners were under a mistaken belief that the land was not within their deed. The Waggoners were not aware of the boundaries until they attempted to learn them when they hired Anderson (Exhibit G).
There was no ouster because this court from all the evidence adduced at trial, cannot conclude that the plaintiffs intended to exclude the owners permanently for the statutory period. "Acts indicative of exclusive possession that are consistent with a claim hostile or adverse to the interests of the owner, are (1) the erection or maintenance of a fence as a property line; (2) the payment of taxes, (3) the actual occupation of the premises in question by the claimant; (4) the maintenance or occupation of a residence upon the property; (5) the uninterrupted cultivation and farming of the premises for the requisite statutory period; and (6) enclosing the property with a fence, and openly and visibly laying a concrete driveway over a portion of the property, planting grass in another portion and clearing a further area of debris following storms, or openly and visibly exploiting the land's only productivities." (Citations omitted) see Mascola Connecticut Bar Journal volume 66, p. 310.
This court concludes that although some of the acts may have been done by the Waggoners, the plaintiff has failed by clear and convincing evidence, to prove that the acts of the Waggoners establish exclusive possession. The Waggoners failed to show that they paid the taxes on the disputed property; the Waggoners did not erect a fence; the maintenance of the property was with permission and the plaintiff did not enclose the property to visibly alert the rightful owners, in short the activities of the Waggoners was not hostile, notorious and open.
According judgment is entered in favor of the defendants on the Second Count. CT Page 4684
THIRD COUNT (Trespass)
The defendant Joel individually and in behalf of the other defendants testified that he placed the split rail fence now there so as to enclose the property and defeat any claims to be made by the plaintiff. Joel further testified that he and other members of the corporation, BBC, decided they erected a fence to exercise their dominion and control. After the survey by Kenney (Exhibit 1) they made efforts to put up the correct type of fence. They attempted not to disrupt the Waggoners plantings. Joel testified they must have the 25 foot right of way and it would seriously compromise BBC's property. The plaintiffs failed and this court concludes that the fence erected by Joel was not done with malice and was not a spite fence. The defendants argue and this court agrees that the defendants did not have the requisite intent to trespass on the plaintiff's property.
Judgment is entered in favor of the defendants on the Third Count.
COUNT FOUR (Interference with use)
The plaintiff argues that she is entitled to have the split rail fence placed there by the defendants, removed because it interferes with the open access to the 25 foot right of way which she enjoyed. Also there is difficulties because she cannot use another driveway and gain access to her necessary systems such as her septic tank to her home at the rear of the property.
Although the fence was not erected as a spite fence to annoy the plaintiff and because this court cannot conclude from all the evidence that it was intended to injure the enjoyment of the plaintiff's property United Petroleum Corp vs Atlantic Refining
212 A.2d J89 (1965), cited by the defendants, it does interfere with the free access to the 25 foot right of way in the plaintiff's deed to which she entitled.
Accordingly judgment may enter in favor of the plaintiff and the court orders the fence as it now exists removed at defendant's cost to allow free access by plaintiff along the 25 foot right of way. The argument of the defendant that the fence has a beneficial use to determine the property boundaries is unavailing in this case since lesser offensive objects may be used to determine the boundaries so as not to interfere with Barbara's free access to the CT Page 4685 right of way created in her deed. Accordingly judgment may enter in favor of the plaintiff to remove the existing fence.
COUNT FIVE
The court has already discussed the allegations under the Fourth Count relating to the claims made under this count alleging violation of Conn. General Statutes § 52-570. The court finds in favor of the defendant on this count and enters judgment in their favor.
Frank S. Meadow Judge Trial Referee